IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK McDONOUGH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 06 C 2732 |
| | ) |
| CITY OF CHICAGO, DEPARTMENT | ) Wayne R. Andersen |
| OF WATER MANAGEMENT; | ) District Judge |
| ALEXANDER VROUSTOURIS; | ) |
| RICHARD RICE; MICHAEL | ) |
| TIERNEY; BRIAN MURPHY; | ) |
| THOMAS BRIATTA; THOMAS | ) |
| TALLEY; MAUREEN EGAN; and the | ) |
| HUMAN RESOURCES BOARD OF | ) |
| THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM, OPINION AND ORDER**

This case is before the Court on the motion of Defendants City of Chicago, the Human Resources Board of the City of Chicago, Alexander Vroustouris, Richard Rice, Brian Murphy, Thomas Talley, Maureen Egan, Thomas Briatta and Michael Tierney to dismiss Plaintiff Patrick McDonough's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1). For the following reason, the motions to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint and are presumed to be true for purposes of this motion. In 1999, Plaintiff Patrick McDonough was hired by the City of Chicago Water Department as a plumber and assigned to the North District. From 1999 to 2001, McDonough performed his duties in the Water Department without incident. In 2001, McDonough allegedly began to observe a pattern involving trucks hired by the Water

Department. He believed that these hired trucks, owned by people with political connections to City administration, would sit idle at work sites, failing to deliver any services of value for the taxpayers of the City of Chicago. Because the arrangement did not appear ethical or legal to McDonough, he brought his concerns to the Inspector General.

Thereafter, McDonough allegedly began to experience retaliation on the job. The retaliation allegedly included things such as reduced overtime opportunities, denial of promotions, and being removed from his previously stable work crew and instead being switched around from work crew to work crew, a less desirable arrangement. McDonough allegedly was also subjected to differential enforcement of the Department's rules, such as an unfair application of a new card "swipe" policy, and being "written up" for purported infractions even though he had not broken any rules. Faced with this treatment, McDonough continued to make complaints within the Water Department, including grievances and complaints to the Inspector General.

Among other things, McDonough alerted the Inspector General that overtime in the Department allegedly was distributed at least in part based on cash bribes to the supervisors, political activity, or intervention by Aldermen; that safety regulations allegedly were being flouted; that gambling and drinking on the job allegedly were widespread; that the Hired Truck problem allegedly was continuing unabated; and that McDonough allegedly was being unfairly persecuted at the workplace for bringing the foregoing to the Inspector General's attention. McDonough alleges that his complaints to the Inspector General were ignored.

In 2003, McDonough met with Mark Brown, a columnist for the *Chicago Sun Times* and blew the whistle on the Hired Truck program and other alleged corruption in the Water Department. With McDonough's assistance, Mark Brown proceeded to write several columns in the *Sun Times* about the alleged corruption in the Hired Trucks program, as did other reporters.

McDonough alleges that it was well known in the Water Department that he was a source for the information in these articles, and McDonough allegedly was routinely referred to on the job as a "rat", as well as other derogatory terms. He also received threats to his physical safety.

Thereafter, McDonough took his concerns to the FBI and several people have pled guilty in the resulting Hired Trucks criminal prosecutions, including the former Commissioner of the Water Department, Donald Tomczak. McDonough alleges that he believes that the federal authorities are continuing to investigate possible criminal charges against other officials.

McDonough alleges that he paid a price for his activities. He alleges that in or about October of 2004, he was ordered to meet with investigators from the Inspector General's office regarding false and retaliatory allegations against him. Thereafter, McDonough was placed on paid leave for the entire winter of 2004-05 and, as a result, was deprived of overtime opportunities. On April 1, 2005, the Water Department fired McDonough. The explanation allegedly provided was that McDonough had violated the City's residency rules. McDonough alleges that this basis for the termination was untrue and pretextual, as McDonough did not violate the residency requirements or any other rules.

A hearing was held before the Personnel Board of the City of Chicago on the propriety of McDonough's termination. On January 17, 2006, the City hearing officer issued a written decision, primarily concluding that the City had failed to prove that McDonough's legal residence was anywhere other than the City of Chicago and that, therefore, his discharge was improper. Accordingly, the City hearing officer recommended that the City rescind the discharge of McDonough's employment. On January 24, 2006, the City's Human Resources Board upheld the City hearing officers' recommendation and reinstated McDonough's job.

McDonough returned to work on February 16, 2006. Since then, McDonough allegedly has experienced further retaliation as a result of his speech on matters of public concern. Specifically, among other things, McDonough allegedly was re-assigned to a different, less geographically convenient district and a less desirable shift. McDonough also allegedly experienced a demotion in his position and a reduction in pay.

On May 16, 2006, McDonough filed his six-count Complaint against the City and the individual defendants in their individual capacities. In Count I, McDonough alleges that the City and the individual defendants retaliated against him for his exercise of protected speech in violation of the First Amendment pursuant to 42 U.S.C. § 1983. In Count II, McDonough alleges that the City and the individual defendants victimized him based on his membership in a class of whistleblowers who spoke out against corruption in the Water Department, thereby depriving him of his equal protection rights as protected by the Fourteenth Amendment in violation of 42 U.S.C. § 1983. In Count III, McDonough alleges a conspiracy in violation of 42 U.S.C. § 1983. In Count IV, McDonough claims violations of the *Shakman* consent decree. In Count V, he brings a claim pursuant to the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/4. Finally, Count VI is a state law petition for writ of certiorari challenging certain portions of the Human Resources Board's decision.

**DISCUSSION**

In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Under Fed. R. Civ. P. 8(a)(2), a complaint need only contain "a short and plain

4

statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted that language to impose two minimal hurdles. "First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the complaint's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra Health*, 496 F.3d at 776-77 (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14).

## I. **Statute of Limitations**

In Counts I-III, McDonough alleges that his First and Fourteenth Amendment rights were violated in contravention of § 1983. In those counts, McDonough complains of discriminatory acts which allegedly took place between 2001-2006. It is well established that the statute of limitations period for § 1983 claims is two years. *See Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir. 1993). Defendants argue that all claims brought pursuant to § 1983 that are based on incidents that occurred prior to May 16, 2004 should be dismissed because they are untimely. McDonough argues that because much of the Defendants' actions occurred within the permitted time period, his claims survive. McDonough also argues that even the conduct alleged in the Complaint which occurred outside the relevant statute of limitations period is actionable under the continuing violation doctrine.

It is well established that a "plaintiff can obtain relief .. for time-barred acts by linking them with an act that is within the statute of limitations through the continuing violation doctrine." See *Fairley v. Andrews*, 300 F. Supp. 2d 660, 670-71 (N.D. Ill. 2004), citing *Selan v.*

5

*Kiley*, 969 F.2d 569, 564 (7th Cir. 1992). In light of McDonough's allegations of a continuing violation theory in this case, see Compl. ¶ 6, a motion to dismiss any of the allegations as time-barred should not be granted at this stage of the proceedings. See *Eruteva v. City of Chicago*, 2005 WL 563213, at *5 (N.D. Ill. March 9, 2005) ("Consequently, because Plaintiff's claims prior to [the statute of limitations period] may be part of a continuing violation theory, Defendant's motion to dismiss those claims is denied."). Although the actions occurring prior to May 16, 2004 may well turn out to be barred by the statute of limitations, we will keep them in the case at this stage of the litigation because they may be part of a continuing violation pattern. We will allow discovery to proceed on these allegations because, even if they are ultimately barred by the statute of limitations, they may well be relevant to, and part of, McDonough's proof relating to his timely claims.

For these reasons, the motion to dismiss the portions of Counts I-III pertaining to actions occurring before May 16, 2004 is denied at this time. Defendants may revisit this issue after discovery.

In addition, Defendants argue that the allegations of Count IV based on incidents which allegedly occurred prior to November 16, 2005 are barred by the 180-day limitations period of Title VII because the Seventh Circuit has adopted Title VII's 180–day filing period for all claims brought for a violation of the *Shakman* decree. For the reasons stated above, because the continuing violation theory may save these allegations, we deny the motion to dismiss at this time.

**II. Conspiracy Claim**

In Count III, McDonough alleges a conspiracy claim under § 1983. He alleges that the City and the individual Defendants, all of whom were employed by the City at all relevant times, acted together within the scope of their employment to conspire to deprive him of his constitutional rights. McDonough further alleges that the Defendants acted under color of law when they allegedly committed the acts in furtherance of the conspiracy.

Defendants first argue that McDonough's conspiracy claim should be dismissed under the intra-corporate conspiracy doctrine. Under the intra-corporate conspiracy doctrine, a corporation or government entity cannot conspire with itself. *Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108, 110-11 (7th Cir. 1990); *Wright v. Illinois Dep't of Children and Family Serv.,* 40 F.3d 1492, 1508 (7th Cir. 1994). "The intra-corporate conspiracy doctrine precludes members of the same entity from becoming 'conspirators' when they act within the scope of their authority." *Fairley v. Andrews,* 300 F. Supp. 2d 660, 668 (N.D. Ill. 2004).

Because the purpose of the doctrine is to protect only routine and lawful business decisions, the Seventh Circuit recognizes several exceptions to the application of the doctrine. *See Jefferson v. Harvey*, 2000 WL 15097, *4-5 (N.D. Ill. Jan. 5, 2000). An exception exists when employees are alleged to have been motivated by illicit purposes, as opposed to the lawful interests of the organization. See *Boloun v. Williams*, 2002 WL 31426647 at *10-12 (N.D. Ill. Oct. 25, 2002), citing *Hartman v. Board of Trustees*, 4 F.3d 465, 470 (7th Cir. 1993) (when defendants acted out of animus, "the interests of the corporation would have played no part in the employees' collective action").

For conspiracies such as the one alleged here, involving a classic charge of retaliation, the underpinnings of the intra-corporate conspiracy doctrine do not apply. See *Fairley*, 300 F. Supp. 2d at 668-69. In this case, McDonough has alleged that Defendants conspired to deprive

7

him of his constitutional rights. As Judge Darrah held in *Gross v. Town of Cicero,* 2006 WL 288262 at *12 (N.D. Ill., Feb. 1, 2006), "[a]greeing to harass and/or retaliate against an employee is not within the scope of Defendants' authority." Accordingly, McDonough's conspiracy claim is not barred by the doctrine of intra-corporate conspiracy.

Defendants next argue that McDonough's conspiracy claim must be dismissed because he does not sufficiently plead the conspiracy's details. In order to state a claim under § 1983 for conspiracy, a plaintiff must allege at least the following elements: 1) the parties; 2) the general purpose of the conspiracy; and 3) the approximate date of the conspiracy. *Loubser v. Thacker,* 440 F.3d 439, 443 (7th Cir. 2006); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Courts have held that "all that is required to state a claim of conspiracy is a simple pleading of facts from which a conspiracy may be inferred." *Windsor v. Village of Lynwood.* 1992 WL 80455, at *4 (N.D. Ill. April 9, 1995). A plaintiff "is not required to plead with exact specificity a conspiracy to deprive him of his constitutional rights, but rather just enough circumstantial evidence [that] may provide adequate proof of a conspiracy." *Moreno v. Town of Cicero,* 2002 WL 31017932, at *3 (N.D. Ill., Sept. 5, 2002).

In this case, McDonough's conspiracy claim identifiers the parties alleged to have been involved in the conspiracy, the general purpose of the conspiracy, and the approximate dates involved. See Compl. ¶¶ 39, 55-60. Therefore, the motion to dismiss the conspiracy claims in Count III is denied.

### III. **Monell Claims**

Counts I, II and III are based on alleged violations of § 1983. In order to state a § 1983 claim, plaintiff must plead that a person acting under color of state law subjected or caused him to be subjected to the deprivation of a constitutional right by reason of a governmental policy or

8

custom. *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 694 (1978); *City of Oklahoma v. Tuttle,* 471 U.S. 808, 816 (1985).

Defendants argue that McDonough's § 1983 claims should be dismissed because he has failed to allege that he has been injured by reason of a governmental policy or custom. However, the Seventh Circuit has held that "a single act or decision of a final policymaker can establish municipal policy." *McGreal v. Ostrov,* 368 F.3d 657, 685 (7th Cir. 2004), citing *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 735 (7th Cir. 1994).

In this case, McDonough alleges that the alleged misconduct was committed by "municipal policymakers with final authority to establish municipal policy . . . or had been delegated the same." Compl. ¶¶ 45, 52. We find that McDonough sufficiently alleges that the Defendants were policymakers such that their actions could create *Monell* liability. Therefore, the motions to dismiss on this ground are denied.

Defendants next argue that McDonough has not sufficiently pled a general policy and practice by the Defendants with enough detail to survive a motion to dismiss. Despite Defendants' arguments regarding the sufficiency of McDonough's *Monell* pleadings, the Supreme Court has established that *Monell* claims are not subjected to a heightened pleading standard: "Rule 8(a)(2) requires that a complainant include only `a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Leatherman v. Tarrant County* NICU, 507 U.S. 163, 168 (1993). This requirement is interpreted quite liberally: "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rule requires is `a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Id.,* citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

9

In this case, McDonough pleads that the misconduct described in his Complaint occurred pursuant to the City's policy and practice. Compl. ¶¶ 45, 52. The Complaint pleads that the Defendants acting under color of state law caused McDonough to be subjected to the deprivation of his constitutional rights by reason of the City's policy and practice. Therefore, McDonough has met the threshold for pleading, and the motion to dismiss the § 1983 claims in Counts I, II and III is denied.

### IV. Claims Against The Individual Defendants

Defendants argue that Counts IV and V against the individual Defendants should be dismissed because neither the *Shakman* consent decree nor the Illinois Whistleblower Reward and Protection Act allow for individual liability. In his response brief, McDonough agrees with Defendants that the Illinois Whistleblower Reward and Protection Act does not allow for a cause of action against individual Defendants in their personal capacities. Therefore, Count V is voluntarily dismissed against the individual Defendants.

#### A. Claim For Violation Of The *Shakman* Decree

In Count IV, McDonough alleges that "Defendants discriminated against Plaintiff in the terms and conditions of his employment due to his speech against politically-favored members of the Water Department" and that "Defendants further discriminated against Plaintiff in the terms and conditions of his employment due to his political affiliation and activities." Compl. ¶¶ 65, 66. McDonough further alleges that "[t]he conduct of Defendants described herein violated Shakman." Compl. ¶ 64.

Defendants argue that McDonough's allegations fail to state a claim against the individual Defendants because they cannot be liable in their personal capacities for any alleged violations of the *Shakman* consent decree. We agree. Many courts have held that the individual

10

Defendants cannot be held liable in their personal capacity for any alleged violations of the *Shakman* decree. See *Hernandez v. O'Malley*, 98 F.3d 293, 294 (7th Cir. 1996); *Plotkin v. Ryan*, No. 99 C 53, 1999 WL 965718, at *7 (N.D. Ill. Sept. 29, 1999).

In *Hernandez,* the Seventh Circuit held that the *Shakman* decree does not create personal liability. 98 F.3d at 294-95. The Seventh Circuit reasoned, "[w]e cannot fathom why a person suing to enforce the *Shakman* decree might want to pursue the officeholders in their personal capacity, except for the purposes of harassment, which is hardly a reason the court should approve." *Id.* at 295.

For these reasons, the motion to dismiss the claims for violations of the *Shakman* decree against the individual Defendants is granted.

### V. Illinois Whistleblower Reward And Protection Act Claim

In Count V, McDonough alleges a cause of action for violation of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/4. McDonough alleges that he was discharged and discriminated against by Defendants because of "actions he took in furtherance of investigating and providing assistance for a suit to recover for Defendants' frauds under the Illinois False Claims Act." Complaint, ¶ 74-75.

Defendants argue that McDonough's claim should be dismissed because he fails to allege that a False Claims Act actually was brought, by whom it was filed, and whether it is still pending. We disagree.

A plaintiff may bring a cause of action under the Whistleblower Act, 740 ILCS 175/4(h), regardless of whether or not the actual *qui tam* or False Claims Act proceeding for which he or she provided assistance,actually goes forward. See *Fanslow v. Chicago Manufacturing Center*, 384 F.3d 469, 479-80 (7th Cir. 2004). Simply put, a plaintiff may seek the protections of the

Whistleblower Act regardless of whether a *qui tam* or False Claims Act proceeding has been initiated by or on behalf of the State of Illinois. *Id*. at 479-82.

In this case, McDonough alleges that he was discriminated against because of actions he took in providing assistance for a False Claims Act lawsuit regarding Defendants' alleged fraud. As a result, McDonough has properly stated a cause of action under the Illinois Whistleblower Reward and Protection Act, and Defendants' motion to dismiss this Count is denied, although this claim will be dismissed against the individual Defendants as mentioned above.

### VI. Writ Of Certiorari Claim

Count VI is a petition for writ of certiorari and challenges certain portions of the January 24, 2006 findings and decision of the Human Resources Board of the City of Chicago. McDonough also alleges in this Count that he was denied a full and fair opportunity to make a full record before the Board.

McDonough appealed the Human Resources Board's determination in the Circuit Court of Cook County, Chancery Division. The City filed a cross-claim to the appeal. In 2006, McDonough dismissed his state court action after filing his federal lawsuit, and the City's cross-claim was stayed by the state court. Defendants argue that Count VI in this case should be dismissed because of the danger that both the state court and this Court will ultimately have to rule on the issues surrounding the Human Resource Board's decision. Defendants argue that this is a waste of judicial resources and could result in inconsistent judgments.

We agree. The action currently pending, but stayed in state court, is the exact same Human Resources Board's determination that Plaintiff seeks to challenge in this Court. The state court and the federal court will be required to review the same Human Resources Board transcript, regardless of the fact that Plaintiff has withdrawn his writ of certiorari in state court.

12

Even if this Court were to rule on Plaintiff's writ of certiorari, the state court will still have to rule on the City's cross-claim appeal that is still pending in state court. This means that the same issues surrounding that Human Resources Board's determination will be decided twice: once by the federal court and once by the state court. We consider this to be a waste of judicial resources because both courts would have to review the lengthy Human Resources Board's 14-volume hearing transcript and could possibly reach different and inconsistent conclusions involving the same facts and law. Therefore, in the interests of judicial economy and of avoiding inconsistent outcomes, Count VI of Plaintiff's Complaint is dismissed.

### VII. Pleading Supplemental Jurisdiction

Finally, Defendants argue that Counts V and VI should be dismissed because McDonough did not properly invoke this Court's supplemental jurisdiction over his state law claims. McDonough concedes that he failed to expressly invoke this Court's supplemental jurisdiction over his state law claims. We grant McDonough leave to file an amended complaint expressly invoking this Court's supplemental jurisdiction under 28 U.S.C. 1367(a).

### CONCLUSION

For the foregoing reasons, the motion of Defendants the City of Chicago, the Human Resources Board of the City of Chicago, Alexander Vroustouris, Richard Rice, Brian Murphy, Tommie Talley, Maureen Egan, Thomas Briatta, Michael Tierney to dismiss Plaintiff's Complaint (# 108) is granted in part and denied in part. The motion is granted as to the claims against the individual Defendants in Counts IV and V, and as to Count VI. The motion is denied in all other respects. Plaintiff is given leave to file an amended Complaint properly invoking this

Court's supplemental jurisdiction. Plaintiff shall file such amended Complaint on or before June 24, 2008. This case is set for status on June 26, 2008 at 9:00 a.m.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated:   June 6, 2008