UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK McDONOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 2732 |
| | ) | |
| THOMAS BRIATTA, et al., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick McDonough, an employee of the City of Chicago ("City"), brought suit against the City and various employees for allegedly retaliating against him for the exercise of his right to free speech. Several of his claims were dismissed, and all but one were decided for the Defendants at summary judgment. *See McDonough v. City of Chicago,* No. 06 C 2732, 2008 WL 2309709 (N.D. Ill. June 2, 2008); *McDonough v. City of Chicago*, 743 F. Supp.2d 961 (N. D. Ill. 2010). The case proceeded to trial on just one claim: that Defendant Thomas Briatta, a foreman in the Water Department where Plaintiff worked, had harassed Plaintiff verbally in violation of his constitutional rights. After jurors deadlocked on that single claim, Briatta and McDonough reached an agreement to settle it. McDonough has now filed a bill of costs and petitions for payment of his attorney's fees. Briatta acknowledges his liability for fees expended in obtaining a successful result, and for costs, but contends that McDonough has substantially overstated the amount to which he is entitled. For the reasons explained here, Plaintiff's motion [364] and petition [368-1] are granted in part and denied in part.

## FACTUAL BACKGROUND

This case began more than six years ago and has resulted in hundreds of thousands of dollars in legal fees. (Pl.'s (Corrected) Pet. for Att'y's Fees [368-1], hereinafter "Pl.'s Pet.", at 1-2.) Plaintiff filed his original complaint on May 16, 2006. He asserted six counts against twelve

Defendants associated with the City of Chicago Department of Water Management, alleging that Defendants retaliated against him for exercising his First Amendment rights, which resulted in (1) a fabricated charge that Plaintiff violated City residence requirements; (2) a rigged investigation and hearing; (3) suspension and termination; and (4) further retaliation through reassignment and demotion after Plaintiff was reinstated. (Complaint [1].) District Judge Wayne Andersen granted the Defendants' motions to dismiss the complaint in part and denied them in part on June 6, 2008. *McDonough v. City of Chicago,* No. 06 C 2732, 2008 WL 2309709 (N.D. Ill. June 2, 2008). Plaintiff filed an amended complaint on June 24, 2008. (Am. Compl. [188].)

Extensive discovery followed. The remaining Defendants moved for summary judgment after discovery, and Plaintiff opposed that motion with respect to some but not all of his claims. On September 29, 2010, Chief Judge James Holderman entered summary judgment in favor of the Defendants on all but one claim: the claim of harassment against Defendant Briatta. *McDonough v. City of Chicago*, 743 F. Supp.2d 961 (N.D. Ill. 2010). Significantly, Plaintiff's dismissed claims included several other allegations against Briatta. Judge Holderman found that Plaintiff "presented no evidence" that Briatta had participated in or caused the investigation that resulted in Plaintiff's termination, and that Briatta could not be held liable for violating Plaintiff's First Amendment rights based on those events. (*Id.* at 982.) Judge Holderman concluded, further, that Plaintiff's claims that Briatta disciplined him and denied him overtime and promotions were time-barred (*id.* at 975-77, 987), and that Plaintiff's claim that Briatta transferred him between crews was not supported by sufficient evidence to survive summary judgment. (*Id.* at 979.) The only remaining claim after summary judgment was thus that Briatta had verbally harassed Plaintiff between May and October 2006. (*Id.* at 968, 971, 973-74, 978-79.)

Briatta asserts that the "vast majority" of discovery related to claims Plaintiff made about the investigation of his alleged residency violation and termination. In fact, according to Briatta, most of the discovery did not relate to Briatta at all. (Def. Thomas Briatta's Mem. in Opp. to Pl.'s Pet.

[371], hereinafter "Def.'s Mem.", at 7-8; Blankenship Decl., Ex. A to Def.'s Mem. [371-1], at ¶ 4.) Instead, Briatta contends, only "a handful" of the thousands of pages of documents exchanged in discovery even mentioned him, and only 35 of the 1,177 pages of Plaintiff's deposition transcript focused on questions about his alleged verbal harassment of Plaintiff. (Blankenship Decl. ¶¶ 5-10; Def.'s Mem. at 8-9.)

Plaintiff's remaining claim, "the Briatta claim," was tried to a jury on May 23 and 24 of 2011. According to Defendant, Plaintiff's evidence at trial consisted of the testimony of Plaintiff and two other witnesses, Bruce Randazzo and Ramon Caraballo, that Briatta had threatened and harassed Plaintiff. Briatta's evidence consisted largely of his own testimony denying that he had harassed Plaintiff at all. (Def.'s Mem. at 2.) The trial concluded with a hung jury, and the parties entered into a Settlement Agreement in which Plaintiff recovered $50,000. The City of Chicago, a Defendant in the original action, paid for Briatta's defense throughout the litigation and agreed to make the $50,000 payment to Plaintiff under the Agreement. (Def.'s Mem. at 12.) The Agreement acknowledged that Plaintiff is the prevailing party on the Briatta claim for the purpose of attorney's fees. (Settlement Agreement ¶ 8.) Plaintiff now seeks $21,737.12 in costs under 28 U.S.C. 1920 and $449,083 in attorney's fees for 1,284.25 total hours of work by nine attorneys as well as $1,722.12 in expenses under 42 U.S.C. 1988.

## DISCUSSION

**I. Attorney's Fees**

A prevailing party in a civil rights action is entitled to recover for reasonable attorney's fees. *County of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (fee awards encourage meritorious claims); *Blum v. Stenson*, 465 U.S. 886, 897 (1984). There is a strong presumption that the lodestar is a reasonable amount of attorney's fees. *Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 1673 (2010); *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). The lodestar is calculated by multiplying the reasonable number of hours by a reasonable hourly rate.

3

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The inquiry into what is a reasonable amount of attorney's fees does not end, however, with a calculation of the lodestar, which may be adjusted in some circumstances.  *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010); *Johnson v. GDF, Inc.*, 668 F.3d 927 (7th Cir. 2012).

> **A.**   **Plaintiff as Prevailing Party**

The Seventh Circuit held in *Sottoriva* that plaintiffs are "prevailing parties" for the purpose of attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  617 F.3d at 975.  Plaintiff here received $50,000 from the Settlement and was acknowledged in the Settlement as the prevailing party on the Briatta claim.  He characterizes the final outcome of this litigation as a "tremendous success" for him since the City's agreement to pay $50,000 and attorney's fees on behalf of Defendant "accomplished everything that Plaintiff reasonably set out to accomplish."  (Pl.'s Pet. at 1.)  Accordingly, Plaintiff argues, he is entitled to his full requested fees and costs.  (Pl.'s Pet. at 4, citing *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (fee award should not be reduced because judgment amount obtained was less than what plaintiff originally sought or because fees were greater than amount plaintiff recovered so long as there is a more than nominal award).)

Defendant sees the circumstances differently.  Plaintiff prevailed on just one portion of one claim against one Defendant, he emphasizes, and the Settlement Agreement did not acknowledge Plaintiff as the prevailing party on anything other than a single claim for verbal harassment.  (Def.'s Mem. at 13.)  Plaintiff's claims that he was wholly victorious are, according to Defendant, "disingenuous and simply wrong."  (Def.'s Mem. at 1.)  Defendant points out that Plaintiff's original complaint asserted wide-ranging allegations of retaliation against twelve Defendants, yet Plaintiff prevailed on a single claim against only one of them.  (*Id.* at 2.)  He therefore only partially prevailed.  Moreover, Defendant argues, the expenses Plaintiff incurred for his failed claims were not necessary to his success on the Briatta claim because the only trial evidence in support of that

4

claim was the testimony of Plaintiff and two friends. (*Id.* at 3.) Under *Sottoriva*, a litigant may recover only the costs and fees "that would have been reasonable" had he prosecuted only the claim or claims on which he was successful. 617 F.3d at 976. The lodestar can be adjusted downward because a plaintiff has only partial success in an action. *Hensley*, 461 U.S. at 436 (litigant cannot recover for claims on which he did not prevail, and award must be reasonable in comparison to result obtained). Defendant argues that Plaintiff should recover no more than "a small fraction" of the fees and costs he claims, given his limited success. (Def.'s Mem. at 3.) Defendant contends further that the records supporting Plaintiff's Petition are "filled with vague entries, duplicative entries, and entries that have no relationship to the Remaining Briatta Claim, making it impossible to determine what time was actually and reasonably spent" on that claim. (Def.'s Mem. at 3.)

Plaintiff resists any reduction from his claimed fees and urges that a downward departure for partial success does not apply in this case. If a downward departure for partial success is appropriate at all, Plaintiff argues, the departure should be minimal. (Pl.'s Pet. at 4-5.) Though Plaintiff admits that several of his claims were dismissed, he contends that evidence relating to those unsuccessful claims also related to the claim that was tried. Plaintiff urges that evidence "well beyond the narrow facts about Briatta's interaction with McDonough" was presented at the trial through "a deliberate choice by both parties." (Pl.'s Pet. at 5.) For example, Plaintiff notes that Defendant opposed his motion *in limine* to exclude evidence about Plaintiff's termination for allegedly violating City residency requirements. Plaintiff argues that Defendant is therefore partly responsible for the presentation of evidence at trial about matters that went beyond Briatta's alleged verbal harassment of Plaintiff. (*Id.*)

Reduction of time devoted to pretrial efforts is also inappropriate, Plaintiff urges, because broad discovery was "necessary and reasonable" for the claim on which he succeeded. (*Id.* at 5-6 (citing *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995) ("Because of the

interrelated nature of the two claims . . . attorneys had to prepare for the 'litigation as a whole'"); *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) (attorney entitled to all attorney's fees reasonably expended in pursuing a winning claim); *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661-62 (7th Cir. 2007) (prevailing party entitled to attorney's fees for activities factually related to successful issues if reasonably calculated to result in relief).) In short, Plaintiff agues that "there was no way to know *ex ante* precisely what was going to be part of the trial," so fees and costs related to a broad range of subjects implicated by Plaintiff's original claims are fairly recoverable. (Pl.'s Pet. at 6.) Plaintiff urges that the $50,000 compensation he received is an "overall successful financial result" and that failing to award full attorney's fees would discourage civil rights attorneys' "vigorous enforcement of their clients rights." (Pl.'s Pet. at 8.) Citing public policy concerns, Plaintiff urges that attorneys will not perform their functions effectively if they are threatened with fee reductions under circumstances like these. (*Id.* at 8-9.) Plaintiff also argues that other factors listed by *Hensley* weigh in favor of awarding his attorneys their full lodestar: Plaintiff asks the court to recognize that he brought an "undesirable" case which would not attract many lawyers; that his attorneys "undertook substantial risk of nonpayment" in a case where "[m]uch time, labor, and creative skill was required to achieve the settlement;" and that his attorneys are of distinguished "experience, reputation, and ability." (Pl.'s Pet. at 11-12.)

The court recognizes that Defendant has engaged in a line-by-line analysis of the fees billed by Plaintiff's attorneys. The court acknowledges, further, that Plaintiff did not prevail on any of the claims which were dismissed or decided against him at summary judgment. He did achieve a respectable award, however, and the settlement bars any appeal from dismissal of his other claims. Moreover, for a number of reasons, it is impossible to parse which costs and attorney time were related to Plaintiff's success on the Briatta claim with total precision. The court concludes that, as described below, the most responsible course is to determine the appropriate hourly billing rates

and number of hours related to the litigation overall. Then, recognizing that Plaintiff only partially prevailed on his initial claims, the court will adjust downward to account for this limited success.

### B. Calculation of the Lodestar

#### 1. Hourly Rates

Defendant urges that the billing rates Plaintiff's attorneys used were excessive and notes that the rate Attorney Blankenship billed for his defense of Briatta was $250 per hour. (Def.'s Mem. at 21; 12/20/11 letter from Blankenship to Wang, Ex. C to Def.'s Mem. at 2-3.) Plaintiff argues that the rates charged by his attorneys were reasonable based on their skill, experience, and payments from other clients. The requested hourly rates for his attorneys are:

| Attorney | Rate |
|---|---|
| Arthur Loevy (admitted in 1964) | $500 |
| Jon Loevy (admitted in 1993) | $450 |
| Kurt Feuer (admitted in 1984) | $500 |
| Jon Rosenblatt (admitted in 1999) | $425 |
| Daniel M. Twetten (admitted in 2001) | $400 |
| Elizabeth Wang (admitted in 2006) | $285 |
| Matthew Jenkins (admitted in 2007) | $285 |
| Andy Thayer (paralegal) | $100 |
| Frank B. Ávila (admitted in 2001) | $300 (in-office), $350 (in court), $100 (travel) |
| David A. Miley (admitted in 2004) | $300 (in-office), $350 (in court), $100 (travel) |

Plaintiff has offered evidence adequate to support these claimed rates. Arthur Loevy was admitted to the bar in 1964. (A. Loevy Aff. [366-3] ¶1.) Retainer agreements with other clients show that his billing rate is $550. (Dunlap Retainer Agreement [366-4] ¶ 2; Sparks Retainer Agreement [366-4] ¶ 2.) Jon Loevy was admitted to the bar in 1993. (J. Loevy Aff. [366-4] ¶ 1.) Judge Castillo approved a billing rate of $410 for him in August 2010. (*Id.* at ¶ 42.) That same year, Judge Gettleman approved a billing rate of $450 for him. (*Id.* at ¶ 43.) Retainer agreements with other clients show that his billing rate is $450. (Dunlap Retainer Agreement [366-4] ¶ 2; Sparks Retainer Agreement [366-4] ¶ 2.) Daniel M. Twetten was admitted to the bar in 2001. (Twetten Aff. [366-7] ¶ 3.) During the Briatta trial, Twetten was paid $400 per hour by two other clients for employment matters involving workplace misconduct. (*Id.* ¶ 9; 2/21/11 Client Engagement Letter

7

[366-7], at 1; 7/27/11 Client Engagement Letter [366-7], at 1.) Elizabeth Wang has practiced law since 2006. (Wang Aff. [366-8] ¶ 1.) In 2009, a judge in the Northern District of Indiana awarded $250 per hour for her work in another case. (*Id.* at ¶ 10; 8/21/09 Order [366-8] at 1.)

Kurt Feuer has practiced law since 1984. (Feuer Aff. [366-5] ¶ 1.) Jon Rosenblatt has practiced law since 1999. (Rosenblatt Aff. [366-5] ¶¶ 1-2.) Matthew Jenkins was admitted to the bar in 2007. (Jenkins Aff. [366-9] ¶ 1.) Frank Ávila was admitted to the bar in 2001. (Ávila Aff. [366-12] ¶ 5.) David Miley was admitted to the bar in 2004. (Miley Aff. [366-12] ¶ 4.) Feuer, Rosenblatt, Jenkins, Ávila, and Miley did not present evidence of their individual billing rates beyond their affidavits, but Plaintiff cites rates paid in other civil rights cases as evidence that these rates are reasonable. (Pl.'s Pet. at 17-18.) Among other evidence, Plaintiff includes the affidavit of Bradley S. Block, then Managing Counsel of Litigation of McDonald's Corporation, which states that in 2007, rates for "litigation lawyers at a [Chicago] law firm . . . regularly retained on behalf of McDonald's" ranged from $440 per hour for an associate to $685 per hour for a senior partner.[1] (Block Aff. [366-18] ¶¶ 1, 3-4.) Plaintiff also includes a 2010 declaration from Everett J. Cygal, a commercial litigation and arbitration attorney at Schiff Hardin LLP, who stated that attorneys at his firm who worked on a prisoner civil rights case had billing rates between $370 and $700 per hour. (Cygal Aff. [366-19] ¶¶ 1, 5, 8.)

Though it is not controlling in the Seventh Circuit, Plaintiff also references the Laffey Matrix created by the United States Attorney's Office for the District of Columbia, as well as various Northern District cases where Plaintiff argues the Laffey Matrix has been "approved, either expressly or implicitly." (Pl.'s Pet. at 18-19.) Under the Laffey Matrix for 2011-2012, the suggested hourly rate is $495 for twenty or more years of experience, $435 for eleven to nineteen years of experience, $350 for eight to ten years of experience, $285 for four to seven years of experience,

---

[1] Block disclosed that he would soon be joining Loevy & Loevy—the firm where several of Plaintiff's lawyers work—as an attorney. (Block Aff. ¶ 2.)

and $240 for one to three years of experience. (Laffey Matrix [366-23] at 1.) After adjusting for geographical differences in pay, Plaintiff argues, the rates sought for Plaintiff's counsel are equal to or less than the Laffey Matrix presumptions. (Pl.'s Pet. at 19-20.)

Defendant does not offer specific suggestions about what would be a reasonable hourly rate for each of Plaintiff's counsel. Though the court would prefer to have evidence that each attorney's rate is the typical rate paid by clients, Plaintiff has presented sufficient evidence that his counsel's rates are reasonable. In light of Plaintiff's evidence that the rates charged are actually paid by other clients and in line with market rates, the court approves each of the listed hourly rates.

### 2. Number of Hours Billed

The number of hours for which Plaintiff seeks recovery is substantial, but Plaintiff contends the number of hours devoted to this case overall is reasonable in light of the protracted legal disputes involved in the case. (Pl.'s Pet. at 12-13.) As evidence, Plaintiff notes that four private firms acting as counsel for various defendants in the action billed the City for 2,953 hours, while Plaintiff's counsel billed him for only 1,284.25 hours. (Pl.'s Pet. at 13.) Though many of the original defendants successfully sought dismissal of the charges against them, Plaintiff argues that "[t]he fruits of all those efforts remained available to Briatta's counsel at trial." (Pl.'s Pet. at 14.)

Defendant responds by focusing on the hours necessary to litigate the only claim on which Plaintiff prevailed. Though Defendants' lawyers overall devoted nearly 3000 hours to defense of this case, just 590 hours were billed by Briatta's counsel. (Defense Counsel Billing Records [368-13] at 1). In addition, Briatta objects to particular time entries from Plaintiff's lawyers that he claims are insufficiently specific, unrelated to the successful claim, or duplicative. (Def.'s Mem. at 20-21; Specific Objections to McDonough's Attorney's Time Entries, Ex. B to Def.'s Mem. [371-1 at 21-41].) For example, Defendant contends that the work by Dan Twetten was "duplicative of other attorney's work and reflects time necessitated by change of lead counsel." (Specific Objections, [371-1 at 34].) That the core responsibilities for a case might shift among the lawyers in a small

9

office is not remarkable, however. Particularly in light of the length of time this case consumed, the substantial motion practice, the wide-ranging discovery, and the complexity of Plaintiff's initial claims, the overall number of hours billed by his attorneys is not excessive. Again, the court concludes that a downward departure from the lodestar is the most appropriate way to account for attorney hours not related to the Briatta claim.

### C. Applying a Downward Departure for Partial Success

In adopting this approach, the court acknowledges that, as Plaintiff emphasizes, using a "meat-axe" percentage reduction to calculate attorney's fees is disfavored by the Seventh Circuit. (Pl.'s Pet. at 9-10.) The court is well aware of precedents, including *Sottoriva*, that discourage "claim counting." 617 F.3d at 975. Relying solely on the number of pages in Plaintiff's deposition or documents which explicitly refer to Defendant Briatta is ineffective as a way of deciding what efforts were necessary to Plaintiff's success with the Briatta claim. It is impossible to know, for example, whether questions that Briatta's counsel would otherwise have asked at depositions were not necessary because they were asked by other counsel.

Without a workable way of separating individual line-items, the court believes it is fair to rely on a percentage reduction based on the stage of the trial. Recognizing that most of Plaintiff's claims were dismissed on summary judgment, the court concludes that attorney time that pre-dates the summary judgment ruling should be reduced by 80%, and attorney time that post-dates summary judgment should be reduced by 20%, to reflect the narrowing of Plaintiff's counsels' focus to the Briatta claim after summary judgment.

Of the $449,083 in attorney's fees Plaintiff requested, the court finds that $205,348.75 relate to work following summary judgment and $243,734.25 relate to work at or before summary judgment. At the adjusted rates, Plaintiff will therefore be compensated a total of $213,025.85 in attorney's fees (($243,734.25 x .2) + ($205,348.75 x .8)).

Counsel for Plaintiff also list $1,722.12 in expenses recoverable under § 1988. (Section 1988 Expenses [366-10] and [366-11].) Of these expenses, the court finds that $779.28 relate to work at or before summary judgment, and $924.84 relate to work following summary judgment.[2] Adjusting these expenses at the 80% rate for costs after summary judgment and 20% rate for costs before summary judgment (($779.28 x .2) + ($942.84 x .8)), Plaintiff will be compensated $910.13 in expenses under § 1988.

## II.  Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) provides that "[c]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Rule 54(d) "establishes a presumption in favor of a cost award" within certain categories. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). That presumption is a strong one. *See Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) (presumption is strong); *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir.1988) ("the presumption is difficult to overcome").

Counsel for Plaintiff list $21,737.12 in costs taxable under § 1920. (Mot. for Costs [364]; Exhibit for Bill of Costs Filing [364-2].) Under § 1920, a prevailing party may recover for (1) fees of the clerk and marshal; (2) fees of the court reporter for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters. 28 U.S.C. § 1920; *Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2012). The court considers both whether Plaintiff's bill of costs identifies expenses of the type authorized by the statute and whether the costs were reasonably incurred. *Majeske v. City of Chicago*,

---

[2]  The court calculates all Pacer and Westlaw charges listed in Exhibit I as though they post-date summary judgment regardless of when they were incurred.

218 F.3d 816, 824 (7th Cir. 2000) (citing *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997)). The losing party has the burden of demonstrating that costs are not appropriate. *Harney*, 702 F.3d at 927 (citing *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005)).

Plaintiff requests $350 for fees of the clerk; $15,879.94 for court reporter fees; $1,292.10 for printing; $535.67 for summons and subpoena fees; $533.99 for witness fees; and $3,145.42 in other costs. (Mot. for Costs.) Probably because the fee request is so much more substantial, the parties' briefs devote little attention to the matter of costs. Plaintiff simply argues that all costs were reasonable, while Defendant contends that Plaintiff is entitled to recover only costs reasonably related to the Briatta claim. (Pl.'s Pet. at 27; Def.'s Mem. at 27.) Defendant argues that many of the listed costs are unrelated to the Briatta claim or are too vague to attribute to the Briatta claim. Defendant also urges that particular costs—such as transcription costs for Plaintiff's residency hearing and depositions about his claims against the City—should not be awarded at all. (Def.'s Mem. at 27.) Defendant contends that the only expenses that are reasonable and sufficiently specific are the $350 fee of the clerk, $475 for the transcript of Briatta's deposition, $673.20 for the transcript of a witness who testified at trial, $418 for the portion of Plaintiff's deposition taken by Briatta's counsel, and $101.62 for witness fees of non-party witnesses who testified at trial. (*Id.*)

The court partially agrees with Defendant on this issue. Determining which of the costs is related to the successful claim should be more straightforward than making that determination with respect to attorneys' fees. Though there is a strong presumption that costs are to be awarded, Plaintiff has not rebutted Defendant's assertions that the bulk of the costs he claims are not connected to the Briatta claim. The court recognizes one exception: Even had the parties known in advance that Briatta would be the only Defendant at trial, the court believes Plaintiff's own deposition would likely have been lengthy and wide-ranging. The court therefore grants Plaintiff's motion for costs as to (1) $350 for the fee of the clerk; (2) $475 for the transcript of Briatta's

deposition; (3) $673.20 for the transcript of a witness who testified at trial; (4) $4,181.99 for the whole of Plaintiff's deposition; and $101.62 for witness fees of non-party witnesses who testified at trial.  In sum, Plaintiff is entitled to $5,781.81 in costs under § 1920.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for costs [364] and petition for attorney's fees [368-1] is granted in part and denied in part.  Plaintiff is awarded $5,781.81 in costs, $910.13 in expenses recoverable under § 1988, and $213,025.85 in attorney's fees.

ENTER:

Dated:  March 27, 2013

_____
REBECCA R. PALLMEYER
United States District Judge